**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE JAMES MADISON PROJECT<br>1250 Connecticut Avenue, NW<br>Suite 200<br>Washington, D.C.  20036<br><br>    and<br><br>Noah Shachtman<br>The Daily Beast<br>555 W 18th Street<br>Fifth Floor<br>New York, NY 10011<br><br>    Plaintiffs,<br><br>    v.<br><br>GENERAL SERVICES<br>ADMINISTRATION<br>1800 F Street, NW<br>Room 7308<br>Washington, D.C. 20037<br><br>    Defendant. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>Civil Action No. 17-151 |

**FIRST COMPLAINT**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, for the disclosure of agency records withheld from, as well as securing expedited processing of the request submitted by, the plaintiffs The James Madison Project and Noah Shachtman by the defendant General Services Administration.

**JURISDICTION**

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff The James Madison Project ("JMP") is a non-partisan organization established in 1998 to promote government accountability and the reduction of secrecy, as well as educating the public on issues relating to intelligence and national security.

4. Plaintiff Noah Shachtman ("Shachtman") currently serves as the Executive Editor of The Daily Beast, and is a representative of the news media.

5. Defendant General Services Administration ("GSA") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs that are the subject of this action.

## FACTUAL BACKGROUND

6. This lawsuit is brought under the Freedom of Information Act ("FOIA"). It initially seeks both to expedite and compel disclosure of GSA records regarding efforts made by the Trump Administration to proactively coordinate with relevant U.S. Government agencies in order to ensure the Federal anti-nepotism laws were not violated by way of the hiring of relatives of President Donald J. Trump ("President Trump").

7. There have been myriad reports that at least some members of President Trump's family are being considered for possible positions (whether formal or informal) within the Trump Administration. *http://www.cbsnews.com/news/jared-kushner-donald-trump-whisperer-possible-white-house-role/* (last accessed January 3, 2017); *http://www.cnn.com/2016/12/05/politics/ivanka-trump-jared-kushner-dc-move/index.html* (last accessed January 3, 2017); *http://www.cnn.com/2017/01/01/politics/marsha-blackburn-child-care-*

*ivanka-trump-cnntv /index.html* (last accessed January 3, 2017). There are also reports suggesting such relatives might be granted security clearances. *http://www.thedailybeast. com/articles/2016/11/14/trump-wants-secret-clearance-for-kids.html* (last accessed January 3, 2017).

8. On January 9, 2017, it was confirmed that Jared Kushner ("Mr. Kushner"), the son-in-law of President Trump by virtue of his marriage to Ivanka Trump, will serve in the Trump Administration. In a statement to the media, Mr. Kushner's attorney stated that they have been consulting with the Office of Government Ethics ("OGE") regarding steps to take to comply with federal ethics laws. *https://www. yahoo.com/news/trumps-son-law-kushner-named-174240121 .html* (last accessed January 9, 2017).

9. With the exception of one notable but ultimately tangential court ruling, *http://www.politico.com/story/2016/11/donald-trump-transition-jared-kushner-hillary-clinton-precedent-231577* (last accessed January 3, 2017), the question of the binding applicability of the anti-nepotism laws to the President of the United States (as well as the scope of that applicability) remains essentially unresolved. On January 21, 2017, the Department of Justice released a memorandum stating that the hiring of Mr. Kushner did not violate Federal anti-nepotism laws. *http://www.cnn.com/2017/01/21/politics/jared-kushner-white-house-job-justice-department-ruling/index.html* (last accessed January 23, 2017).

10. This FOIA lawsuit will ultimately secure the production of records from GSA, as well as several other Federal agencies, detailing the extent to which (if at all) President Trump's team sought to legitimately coordinate with relevant agencies with respect to concerns about the applicability of the Federal anti-nepotism laws. This FOIA lawsuit

will also seek to clarify to what extent (if any) the U.S. Government's view of the scope of the Federal anti-nepotism laws has changed since the election of President Trump.

## COUNT ONE (GSA – COMPEL PRODUCTION)

11. By letter dated January 4, 2017, the plaintiffs, JMP and Shachtman (referred to jointly as "the Requesters"), submitted to GSA a FOIA request.

12. The FOIA request specifically sought copies of records, including cross-references, memorializing the following:

1) Any records memorializing final determinations by GSA staff regarding the binding applicability of 5 U.S.C. § 3110, as well as any other anti-nepotism statutory or regulatory provisions, to the President of the United States;

2) Any records memorializing final determinations by GSA staff addressing circumstances in which the President of the United States can appoint or employ (or advocate for appointment or employment of) a "relative" – as defined in 5 U.S.C. § 3110(a)(3) – for a position (whether formal or informal) within the U.S. Government without violating the anti-nepotism restrictions set forth in 5 U.S.C. § 3110, as well as any other anti-nepotism laws or regulatory provision;

3) Any records memorializing final determinations by GSA staff addressing the extent to which the President of the United States can authorize a "relative" – as defined in 5 U.S.C. § 3110(a)(3) – for access to U.S. Government classified information without violating the anti-nepotism restrictions set forth in 5 U.S.C. § 3110, as well as any other anti-nepotism laws or regulatory provision;

4) Any records memorializing final determinations by GSA staff identifying positions (whether formal or informal) that "relatives" – as that term is defined in 5 U.S.C. § 3110(a)(3) – of President-Elect Trump can fill without violating the anti-nepotism restrictions set forth in 5 U.S.C. § 3110, as well as any other anti-nepotism laws or regulatory provision;

5) Any records in the possession of the GSA memorializing final recommendations received from President-Elect Trump (or his appropriate designees, transition staff, or private staff) with respect to positions (whether formal or informal) within the U.S. Government set to be filled by "relatives", as that term is defined in 5 U.S.C. § 3110(a)(3); and

    6) Any records in the possession of the GSA memorializing final recommendations received from President-Elect Trump (or his appropriate designees, transition staff, or private staff) with respect to "relatives" – as that term is defined in 5 U.S.C. § 3110(a)(3) – who will be processed for access to U.S. Government classified information.

13. For categories #1-3, the Requesters requested that GSA not impose any particular start date for its searches, and asked that that end date be set as the date upon which GSA began conducting searches for responsive records. For categories #4-6, the Requesters stated that GSA could limit the timeframe of its searches from January 1, 2015, up until the date upon which GSA began conducting searches for responsive records. The Requesters further clarified that the scope of GSA's search should not be limited to GSA-originated records.

14. In the FOIA request, the Requesters pre-emptively waived any objection to the redaction of the names of any U.S. Government officials below a GS-14 position or whom otherwise were not acting in a supervisory position. The Requesters similarly waived any objection to redactions of the names of any U.S. Government contractors in a position of authority similar to that of a GS-13 series civilian employee or below.

15. In terms of all other third parties who work for the U.S. Government and whose names appear in records responsive to this request, the Requesters explained in detail that the privacy interests of those individuals have been diminished by virtue of their involvement in one or more of the U.S. Government functions described above as falling within the scope of the FOIA request. Relying upon the public interest aspect outlined regarding third party privacy interests, the Requesters stated that they were also seeking a waiver of fees or, at a minimum, a reduction in fees.

16. As a final matter, and relying upon the same type of public interest argument outlined in paragraph 15, the FOIA request explained that the Requesters were seeking expedited processing.

17. By letter dated January 11, 2017, GSA issued a substantive response, and designated the request as GSA-2017-000332. In the letter, GSA stated it had not located any responsive records.

18. On January 12, 2017, the Requesters submitted an administrative appeal.

19. By letter dated January 18, 2017, GSA informed the Requesters that it had reaffirmed the underlying substantive response and was denying the appeal.

20. The Requesters have a legal right under the FOIA to obtain the information they seek, and there is no basis for the denial by GSA of said right.

## COUNT TWO (GSA- EXPEDITED PROCESSING)

21. By letter dated January 20, 2017, the Requesters submitted to GSA a supplemental FOIA request.

22. The Requesters re-allege in part paragraph 12.  With two exceptions, the scope of this supplemental FOIA request was the same as the one submitted by the Requesters to GSA on January 4, 2017. The two exceptions were that in the supplemental FOIA request the Requesters added two additional categories of information for which they were seeking responsive records, namely:

7) Any written communications – including GSA documentation memorializing verbal communications – between GSA staff and Jared Kushner ("Mr. Kushner") (or his appropriate designee, including private attorneys); and

8) Any written communications – including GSA documentation memorializing verbal communications – between GSA staff and Ivanka Trump (or her appropriate designee, including private attorneys).

23. For categories #1-6, the Requesters stated that GSA could limit the timeframe of its searches from January 4, 2017, up until the date upon which GSA began conducting searches for responsive records. For categories #7-8, the Requesters stated that GSA could limit the timeframe of its searches from November 8, 2016, up until the date upon which GSA began conducting searches for responsive records. The Requesters further clarified that the scope of GSA's search should not be limited to GSA-originated records.

24. The Requesters re-allege paragraphs 14-16, as the supplemental FOIA request to GSA relied upon similar language regarding third party privacy interests, fee waiver and expedited processing as did the FOIA request submitted on January 4, 2017.

25. On January 23, 2017, GSA acknowledged receipt of the supplemental FOIA request and designed the request as GSA-2017-000411. By message through the FOIA Online web portal, GSA notified the Requesters that their request for expedited processing had been denied. GSA's message stated that the supplemental FOIA request "does not meet the policy requirement to officially constitute expedited processing."

26. The Requesters have a legal right under the FOIA to be granted expedited processing.

WHEREFORE, plaintiffs The James Madison Project and Noah Shachtman pray that this Court:

(1) Orders the defendant federal agency to disclose the requested records in their entirety and make copies promptly available to the plaintiffs;

(2) Orders the defendant federal agency to grant expedited processing to the plaintiffs;

(3) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(4) expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and

(5) grant such other relief as the Court may deem just and proper.

Date:   January 23, 2017

                                  Respectfully submitted,

                                  /s/
                              _____
                              Bradley P. Moss, Esq.
                              D.C. Bar #975905
                              Mark S. Zaid, Esq.
                              D.C. Bar #440532
                              Mark S. Zaid, P.C.
                              1250 Connecticut Avenue, N.W.
                              Suite 200
                              Washington, D.C. 20036
                              (202) 454-2809
                              (202) 330-5610 fax
                              Brad@MarkZaid.com
                              Mark@MarkZaid.com

                              Attorneys for Plaintiffs